UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JORDAN SLACH,<br><br>              Plaintiff,<br><br>    v.<br><br>CITY OF BATTLE GROUND et al.,<br><br>              Defendants. | CASE NO. 3:25-cv-05760-DGE<br><br>ORDER DISMISSING PLAINTIFF'S COMPLAINT (DKT. NO. 3) |

This matter comes before the Court sua sponte pursuant to 28 U.S.C. § 1915(a).

**I      BACKGROUND**

Plaintiff, proceeding pro se and in forma pauperis ("IFP"), filed a complaint against Defendants City of Battle Ground, City Manager Kristina Swanson, Deputy City Manager Robert Ferrier, Human Resources Manager Tamara Gunter, Police Lieutenant Jason Perdue, Police Chief Dennis Flynn, Police Sergeant Aaron Kanooth, and Council Member Tricia Davis. (Dkt. No. 3.)  Plaintiff is suing under 42 U.S.C. § 1983 for violations of the First, Fourth, and Fourteenth Amendments.  (*Id*. at 5.)  Plaintiff is also suing under 42 U.S.C. § 1985.  (*Id*.)

Finally, Plaintiff is bringing a variety of state law torts claims. (*Id*. at 24-27.) All facts alleged by Plaintiff will be accepted as true for purposes of this order. Plaintiff's factual allegations are identified as follows.

Plaintiff began working as a Customer Service Representative for the City of Battle Ground Parks and Recreation Department in May 2024. (*Id*. at 13.) The role was classified as "temporary," but ongoing in nature. (*Id.*) Plaintiff received no disciplinary actions until March 14, 2025. (*Id*.) On March 14, 2025, Plaintiff's supervisor, Parks and Recreation Manager Kim Cederholm, informed Plaintiff a coworker had made allegations against him. (*Id*.) She further informed him he would be suspended pending an HR investigation. (*Id*.) This was the first time Plaintiff had been made aware of the allegations. (*Id*.) Plaintiff did not receive written notice, a copy of the complaint, disclosure of the allegations against him, or information about his rights under HR Policy 22. (*Id*.)

The next day, on March 15, 2025, at Swanson's and Ferrier's direction, Flynn, Perdue, and Kanooth conducted "NCIC III, TLOxp Advanced[,] and weapons database checks" on Plaintiff. (*Id*.) Plaintiff alleges these searches were unauthorized because Plaintiff was not notified, there was no active criminal case justifying the search, and the NCIC III report was requested "under false purpose codes." (*Id*.) Swanson and Ferrier also ordered Battle Ground Police to use public resources to "stake-out" Plaintiff's workplace. (*Id*. at 14.)

Over the next two days, between March 15, 2025 and March 17, 2025, Flynn and Perdue disseminated information from the reports to Swanson, Ferrier, and Cederholm. (*Id*. at 13.) Swanson and Ferrier shared the confidential and restricted information with other city staff. (*Id*.) On or about March 17, 2025, Cederholm documented concerns of bias and favoritism by Swanson and Ferrier. (*Id*. at 14.)

On March 24, 2025, Gunter and Ferrier interviewed Plaintiff. (*Id*.) Neither Gunter nor Ferrier told Plaintiff what the allegations against him were. (*Id*.) Plaintiff reported he was not aware of the allegations. (*Id*.) Both Gunter and Ferrier reported this statement in their interview notes. (*Id*.) Plaintiff emailed Gunter and Ferrier after the interview to provide additional information and express a desire to cooperate further. (*Id*.) No one followed up. (*Id*.)

On March 28, 2025, Gunter called Plaintiff to inform him he was being terminated. (*Id*.) Gunter told Plaintiff he violated the City's Policy Against Unlawful Harassment and Workplace Standards. (*Id*.) Swanson then emailed Plaintiff a copy of the termination notice. (*Id*.) On the same day, Plaintiff submitted a rebuttal. (*Id*.) Plaintiff argued his conduct did not violate the City's Policy Against Unlawful Harassment. (*Id*.) Plaintiff submitted an additional rebuttal on March 29, 2025, which Plaintiff asserts included exculpatory evidence. (*Id*.)

Gunter confirmed receipt of the rebuttals on March 31, 2025. (*Id*.) However, on April 1, 2025, Gunter called Plaintiff to reaffirm the termination. (*Id*.) On April 9, 2025, Gunter emailed Plaintiff to inform him the termination was final. (*Id*.) On April 11, 2025, Swanson informed the Mayor and City Council not to respond to Plaintiff's communications and to direct all communications to her. (*Id*.)

On May 16, 2025, Defendants informed the Washington Cities Insurance Authority (WCIA) about Plaintiff's claim. (*Id*.) The City's insurance policy with WCIA states, "Members shall cooperate by **promptly** reporting all incidents, occurrences, claims and lawsuits which may result in potential liability." (*Id*.) (emphasis added).

Multiple events happened in late May 2025. First, Cederholm resigned from the City of Battle Ground allegedly "due to the ongoing management misconduct and lack of institutional integrity she witnessed." (*Id*. at 15.) Second, on May 21, 2025, Plaintiff sent an email to City

1  Council detailing an alleged conflict of interest arising from Swanson, Ferrier, and Gunter's
2  conduct. (*Id*.) Plaintiff received a "bounce back" email that showed Davis had manually
3  blocked Plaintiff's communications. (*Id*.) Plaintiff sent similar messages and received identical
4  bounce back messages on May 29, 2025 and May 30, 2025. (*Id*.) Third, on May 27, 2025,
5  Swanson contacted Plaintiff claiming he had not submitted any written rebuttals, despite
6  Gunter's prior receipt of the two rebuttals. (*Id*.)

7  On June 5, 2025, Plaintiff filed a formal tort claim with the City of Battle Ground under
8  Washington Revised Code § 4.96.020. (*Id*.) Plaintiff submitted additional records on June 26,
9  2025; July 25, 2025; and August 18, 2025. (*Id*.) On August 19, 2025, WCIA Claim Manager
10 Harlan Stientjes contacted Plaintiff for the first time in an email stating, "We do not see a basis
11 for liability against the City at this time. Therefore, your claim and corresponding demand are
12 denied." (*Id*.)

13 Plaintiff then filed this suit in federal court. Plaintiff brings seven causes of action.
14 Plaintiff's first cause of action asserts a violation of the Fourth Amendment. (*Id*.) Plaintiff's
15 second cause of action asserts a violation of the First Amendment for retaliation. (*Id*. at 16.)
16 Plaintiff's third cause of action asserts a violation of the Fourteenth Amendment for a lack of due
17 process in Plaintiff's termination. (*Id*. at 18.) Plaintiff's fourth cause of action asserts a violation
18 of the Fourteenth Amendment's Equal Protection Clause. (*Id*. at 19.) Plaintiff's fifth cause of
19 action asserts a claim under 42 U.S.C. § 1985. (*Id*. at 21.) Plaintiff's sixth cause of action
20 asserts a claim against the City for *Monell* liability under 42 U.S.C. § 1983. (*Id*. at 22.)
21 Plaintiff's seventh cause of action asserts multiple state law torts claims. (*Id*. at 24-27.)

22                              II       DISCUSSION

23 A. **Legal Framework**

24

Any complaint filed by a person proceeding IFP pursuant to 28 U.S.C. § 1915(A) is subject to a mandatory and sua sponte review. Complaints will be dismissed if they fail to state a claim or are otherwise frivolous or malicious. 28 U.S.C. § 1915(a). They will also be dismissed if they seek monetary relief from a defendant who is immune from such relief. *Id*.

"The standard for determining whether [a] Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). While a pro se plaintiff's complaint must be construed liberally, it must nevertheless contain factual assertions sufficient to support a facially plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"A litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992). To successfully state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*; *Daniels v. Williams*, 474 U.S. 327 (1986). Both elements are required. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

The plaintiff must set forth a specific factual basis upon which he claims each defendant is liable. See *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A] plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Vague and conclusory allegations are not sufficient. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

**B. Analysis**

    **i. Fourth Amendment**

Plaintiffs' first cause of action is against Swanson, Ferrier, Flynn, Perdue, and Kanooth for violations of the Fourth Amendment.[1] (Dkt. No. 3 at 15.) Plaintiff challenges the use of both the NCIC III report and the TLOxp check. (*Id*. at 15–16.)

First, Plaintiff alleges the NCIC III database can only be used for "criminal justice use." (*Id*. at 16.) But this assertion is without basis. The NCIC is a "data system administered by the Federal Bureau of Investigation" that tracks "criminal history information" and "is available to police departments nationwide." *Sykes v. Las Vegas Metropolitan Police Dep't of Clark Cnty. of Nev.*, No. 2:21-cv-01479-RFB-DJA, 2024 WL 1344852, at *2 (D. Nev. Mar. 29, 2024) (quoting *Case v. Kitsap Cnty. Sheriff's Dep't.*, 249 F.3d 921, 923 (9th Cir. 2001). The NCIC III refers to the NCIC's Interstate Identification Index. *Chang v. Chertoff*, No. C 07-3562 SBA, 2007 WL 2972919, at *3 (N.D. Cal. Oct. 10, 2007).

Federal regulations permit "[c]riminal history record information contained in the III System" to "be made available" for a variety of purposes including "[f]or use in connection with licensing or employment, pursuant to Public Law 92-544, 86 Stat. 1115, or other federal regulation, and for other uses for which dissemination is authorized by federal law." 28 CFR

---

[1] This claim, along with Plaintiff's other constitutional claims, will be liberally construed to be a claim under § 1983.

§ 20.33(a)(3).  Because Plaintiff relies on the mistaken belief that Defendants could not have been authorized to run this search without some kind of criminal justice purpose, Plaintiff's claim does not yet state a facially plausible claim for relief.

Second, Plaintiff alleges the use of TLOxp is limited under the TRADS' Subscriber Agreement Additional Terms and Conditions for Public Sector Subscribers ("Subscriber Agreement").  Plaintiff alleges the Subscriber Agreement prevents data from the TLOxp from being "used in whole or in part as a factor in determining eligibility for credit, insurance, or employment or for any other purpose contemplated by the FCRA."  (Dkt. No. 3 at 16.)

The TLOxp refers to a TransUnion database with the Subscriber Agreement referring to a contract between TransUnion Risk and Alternative Data Solutions, Inc. (TRADS) and the Subscriber.  The Subscriber Agreement does limit the use of TRADS information in the context of the Fair Credit Reporting Act.  However, Plaintiff makes no mention of the Fair Credit Reporting Act in his complaint.  Because Plaintiff relies on a provision limiting TLOxp usage only in the Fair Credit Reporting Act context and Plaintiff makes no allegations this case arises out of a Fair Credit Reporting Act context, Plaintiff fails to state a facially plausible claim for relief.  Accordingly, Plaintiff's first cause of action for violations of the Fourth Amendment is dismissed.

### ii. First Amendment

Plaintiff's second cause of action asserts a violation of the First Amendment for retaliation based on Swanson allegedly telling City Council and the Mayor not to respond to Plaintiff's communications.  (Dkt. No. 3 at 17–18).  Plaintiff alleges this conduct prevented his ability under the First Amendment to petition for redress of his grievances and chilled his ability to attend Council meetings.  (*Id*. at 18.)  Plaintiff also alleges his "right to freedom of association

was obstructed when he was effectively banned from the Battle Ground Event Center, his workplace, severing access to his support network and spiritual community." (*Id.*)

To state a First Amendment retaliation claim, a plaintiff must plausibly allege "that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)). To ultimately "prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). Specifically, a plaintiff must show that the defendant's retaliatory animus was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 399 (quoting *Hartman*, 547 U.S. at 260).

Plaintiff's claim asserts that because he engaged in the constitutionally protected speech of informing City Council about Defendants' conflicts of interest and other misconduct, Defendants restricted his access to other councilmembers, blocked his email, chilled his ability to attend City Council meetings, and restricted his access to the Event Center.

Plaintiff's claim has several pitfalls. First, despite Plaintiff's arguments to the contrary, Plaintiff's speech was not constitutionally protected speech. The First Amendment protects only "[r]eports of wastefulness, mismanagement, unethical conduct, violations of regulations, or incompetence by government officials," not "speech involving individual personnel grievances[,] such as job duties, pay, work environment, or interpersonal relationships." *Biggs v. City of St. Paul*, No. 6:18-cv-506-MK, No. 6:18-cv-507-MK, 2019 WL 4575839, at *6 (D. Or. Mar. 7,

2019). Plaintiff's emails to City Council are fundamentally about the interpersonal relationship between him and the individuals responsible for his termination. Plaintiff's April 10, 2025 email, while it appears to be partially cut off, is directly addressed to Gunter and deals only with his termination. (Dkt. No. 3-2 at 3.) Plaintiff's May 21, 2025 email, while it uses the words "conflict of interest," only discusses conflicts in the context of Plaintiff's termination. (*Id*. at 4.) Plaintiff's May 29, 2025 email again relates only to alleged misconduct in the context of Plaintiff's termination. (*Id*. at 5.) Plaintiff's first May 30, 2025 email, while expanding to condemn the City Council's hiring of Swanson, still also only addresses Plaintiff's termination and not widespread misconduct. (*Id*. at 6.) Plaintiff's second May 30, 2025 email also only discusses Plaintiff's termination. (*Id*. at 7.)

Second, even if Plaintiff's speech was constitutionally protected speech, he fails to show the speech was a substantial or motivating factor in the defendant's conduct. Plaintiff alleges four limitations imposed on his speech: Swanson telling City Council not to communicate with him, Davis blocking his emails, feeling chilled from attending City Council meetings, and being banned from Battle Ground Event Center. (Dkt. No. 3 at 17–18.) Swanson's email and Davis's subsequent blocking of him came after his April 10, 2025 email. (*Id*.) Plaintiff's April 10, 2025 email was explicitly about his termination and not constitutionally protected speech. Furthermore, Plaintiff's allegation about being barred from his worksite fails because there are "'obvious alternative explanation[s]' for [the] alleged misconduct." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1055 (9th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 682). Plaintiff acknowledges he was terminated and fails to identify why he would have been authorized to be at his former worksite if not employed there.

Finally, even if Plaintiff's speech was constitutionally protected speech and Defendants were motivated by his protected speech to act, Plaintiff fails to show he has been chilled from engaging in protected activity. Plaintiff alleges he has "been chilled from attending Council meetings due to the hostile and exclusionary environment created by Defendants' actions." (Dkt. No. 3 at 18.) The Ninth Circuit has held barriers to certain forms of communications do not per se constitute a chilling effect. *See Bridgeport Way Community Ass'n v. City of Lakewood*, 203 Fed. Appx. 64, 68 (9th Cir. 2006) ("Although City Council members may have refused to listen to [Plaintiff] because of the City Attorney's directive, there is no evidence that [Plaintiff was] cowed into remaining silent and not making their views known. [Plaintiff] could have persisted in lobbying the City Council, perhaps by using alternative means of communication, such as organizing a protest or petition drive, sending letters, or telephoning the offices of City Council members."). Plaintiff failed to provide any specific facts detailing why he was unable to go to meetings, much less why he could not engage in other forms of petition. Accordingly, Plaintiff's second cause of action for retaliation under the First Amendment is dismissed.

### iii. Fourteenth Amendment (Due Process)

Plaintiff's third cause of action asserts a Fourteenth Amendment due process claim for his suspension without notice and his termination without opportunity for follow-up or serious consideration of his rebuttals. (Dkt. No. 3 at 18–19.) "A procedural due process claim has two discrete elements." *Busey v. Richland School Dist.*, 172 F. Supp. 3d 1167, 1175 (E.D. Wash. 2016). The first "'asks whether there exists a liberty or property interest which has been interfered with by the State.'" *Id*. (quoting *Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013)). The second "'examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Id*.

Plaintiff fails at the first step.  Plaintiff concedes he was a "temporary" worker.  (Dkt. No. 3 at 13.)  Plaintiff also provide evidence that his employment was "at-will" employment.  (Dkt. No. 3-4 at 7.)  At-will employees do not have a "property interest" in their job.  *Baker v. City of SeaTac*, 994 F. Supp. 2d 1148, 1155 (W.D. Wash. 2014) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).  Accordingly, Plaintiff's third cause of action for procedural due process violations is dismissed.

### iv. Fourteenth Amendment (Equal Protection)

Plaintiff's fourth cause of action asserts a claim under the Fourteenth Amendment's Equal Protection Clause.  (Dkt. No. 3 at 19.)  Plaintiff alleges disparate treatment as a male and as a non-favored employee.  (*Id*. at 19–21.)  An equal protection claim can be established under either a 'class-based' theory or a 'class-of-one' theory.  *Clark v. Washington State Dep't of Health*, 735 F. Supp. 3d 1334, 1347 (W.D. Wash. 2024).  "A 'class-based' theory alleges that the defendant discriminated against the plaintiff on the basis of her membership in an identifiable class.'"  *Id*.  (citing *Flores v. Morgan Hill Unified School Dist.*, 324 F.3d 1130, 1134-1137 (9th Cir. 2003)).  In contrast, "a 'class-of-one' theory alleges that the plaintiff 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  *Id*.  (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curium)).  "'The central inquiry in an Equal Protection Clause claim is whether a government action was motivated by a discriminatory purpose.'"  *Id*. at 1347–1348 (quoting *Ballou v. McElvain*, 29 F.4th 413, 426 (9th Cir. 2022)).  To show discriminatory purpose, a plaintiff must show the policy maker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id*.

at 1348 (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). Mere "awareness of consequences" is insufficient. *Id*.

Plaintiff is somewhat unclear whether he intends to bring an Equal Protection Claim based on being a male or being a disfavored employee. Plaintiff's two sex-based claims, which fall under a 'class-based theory,' allege he was terminated for actions female colleagues could do without consequence and denied a promotion because Swanson only wanted to promote females. (Dkt. No. 3 at 19–21.) Plaintiff's claim under a 'class-of-one' theory as a disfavored employee alleges he was terminated because he asked for a promotion Swanson wanted to award to a favored colleague. (*Id*. at 20.)

All three of these claims fail. Plaintiff's claim he was fired for "offering a donut to [a co-worker] on February 22, 2025" and leaving his personal mug at work when women committed the same acts with no consequences discounts the fact even Plaintiff concedes these actions are only "part of the stated basis for termination." (*Id*. at 19–20.) While Plaintiff does not specify the entirety of the allegations against him, Plaintiff's complete lack of discussion on similarly situated individuals leads the Court to find no facially plausible claim for relief. Likewise, Plaintiff's other two assertions—that he was terminated either for being a man asking for a promotion when women were favored or being a disfavored employee who was seeking a promotion—fail to state facially plausible claims for relief. At the time Plaintiff submitted text messages showing his interest in a possible promotion, he already had been suspended and was under investigation. (*Id*. at 20.) Accordingly, Plaintiff's fourth cause of action under the Fourteenth Amendment's Equal Protection Clause is dismissed.

**v. 42 U.S.C. § 1985**

   Plaintiff's fifth cause of action asserts a claim under 42 U.S.C. § 1985 for conspiracy "depriv[ing] Plaintiff of his constitutional rights." (*Id*. at 21.) Plaintiff identified the following acts of conspiracy: "[e]xecutives requesting police personnel run unauthorized background checks on Plaintiff using a false narrative," "[p]olice initiating unlawful NCIC III and weapons checks," "[s]haring results of those checks with City executives and staff," "[c]reating pretext for termination for the benefit of Defendants' favored employees and personal friends," and "[b]locking Plaintiff's post-termination communications to City Council." (*Id*.) Plaintiff further alleges Ferrier provided "false and misleading statements to" WCIA, which "contributed to the ratification of disciplinary actions without review of exculpatory evidence." (*Id*.) Plaintiff alleges WCIA was aware both of prior misconduct by Swanson and "documented deficiencies in HR practices, recordkeeping, and document integrity" but continued to provide services to the Defendants "embolden[ing] City officials to proceed without meaningful oversight." (*Id*. at 21–22.)

   To state a facially plausible claim under § 1985, a plaintiff must show "(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Page v. Clark Cnty. Fire Dist. 6*, 733 F. Supp. 3d 1006, 1019 (W.D. Wash. 2024) (citing *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 828–829 (1983)). "[M]ore than mere conclusory allegations are required to state a valid claim." *Id*.

   Here, Plaintiff fails to allege sufficient facts to find a conspiracy. There is no evidence any other Defendant or WCIA knew of the prior allegations against Swanson. Moreover,

Plaintiff failed to show an injury to his person or property or deprivation of any right or privilege granted to citizens of the United States because all Plaintiff's constitutional claims have been dismissed. *See Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (1989) ("the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations"). Accordingly, Plaintiff's fifth cause of action for violations under 42 U.S.C. § 1985 is dismissed.

### vi. *Monell* liability

Plaintiff's sixth cause of action asserts a claim against the City of Battle Ground for *Monell* liability under 42 U.S.C. § 1983. (Dkt. No. 3 at 22.) There are three theories of liability under *Monell*: (1) "the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity," (2) "the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy," or (3) "the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–1347 (9th Cir. 1992), *cert. denied*, 510 U.S. 932 (1993)). A failure to train employees can also create *Monell* liability if the failure amounts to "deliberate indifference." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). To succeed under *Monell*, the plaintiff must also establish "that the circumstance was (1) the cause in fact and (2) the proximate cause of the constitutional deprivation." *Trevino*, 99 F.3d at 918.

Plaintiff asserts *Monell* violations under all three theories. Plaintiff alleges the City had a policy of "us[ing] investigative tools like TLO, NCIC, CJIS, and other background tools without any clear policy, procedural safeguards, or employee training." (Dkt. No. 3 at 23.) Plaintiff further alleges official policymakers had insufficient "knowledge, training, control" as shown by their statements that "Human Resources Policy 22 do[es] not apply to [Plaintiff,]" despite providing Plaintiff with a copy of the policy in his handbook. (*Id*.) The City also admitted to "not evaluat[ing] the effectiveness of its training nor [having] any feedback mechanism or assessments that ensure policy understanding and compliance." (*Id*. at 23–24.) Finally, Plaintiff alleges "[u]nlawful retaliation condoned or directed by final decisionmakers within the City in response to Plaintiff's protected conduct." (*Id*. at 24.)

None of Plaintiff's allegations constitute a viable claim against the City. As already noted above, Plaintiff fails to identify how Defendants' actions in using investigative tools and addressing Plaintiff's email communications after his termination violated any constitutional rights. As for his claim based on HR Policy 22, Plaintiff concedes he was a "temporary" or at-will worker. He does not deny Defendants' response that HR Policy 22 applied only to permanent workers. His only response is HR Policy 22 was in his employee handbook. That is insufficient on its own to show the policy applied to him. Moreover, Plaintiff never discusses what the policy required. Accordingly, Plaintiff's sixth cause of action for municipal liability under *Monell* is dismissed.

### vii. State law torts

Plaintiff's seventh cause of action asserts state law torts claims for intentional infliction of emotional distress, negligent supervision and retention, defamation per se, fraud/misrepresentation, and wrongful termination in violation of public policy. (Dkt. No. 3 at

24–27.)  This Court can exercise supplemental jurisdiction over state law claims when "claims [] are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  The Court can decline to exercise supplemental jurisdiction if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction" or if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  Because there are no remaining federal claims, the Court declines to exercise supplemental jurisdiction over these claims.  Accordingly, Plaintiff's seventh cause of action for state law torts is dismissed.

### III   ORDER

Based on the foregoing, Plaintiff's claims are DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff is granted leave to file an amended complaint to address the deficiencies noted in this order.  Plaintiff's amended complaint shall be filed no later than **October 28, 2025**.  The failure to file an amended complaint that addresses the deficiencies identified herein will result in the dismissal of the present matter.

The Clerk shall not issue any new summons until after Plaintiff has filed an amended complaint and after the Court has conducted a review of the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff's motion to appoint counsel (Dkt. No. 6) is DENIED as moot at this time.

Plaintiff's motion for service by U.S. Marshals (Dkt. No. 8) is DENIED as moot at this time.

The Clerk shall calendar this event.

Dated this 7th day of October, 2025.

David G. Estudillo
United States District Judge

ORDER DISMISSING PLAINTIFF'S COMPLAINT (DKT. NO. 3) - 17