UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JORDAN SLACH,

                  Plaintiff,

      v.

CITY OF BATTLE GROUND et al.,

                  Defendants.

CASE NO. 3:25-cv-05760-DGE

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 26)

Before the Court is Defendants' motion for judgment on the pleadings.  (Dkt. No. 26.) The Court GRANTS the motion as to Plaintiff's Fourth Amendment claim, First Amendment Right to Petition claim, Fourteenth Amendment Procedural Due Process claim, Fourteenth Amendment Liberty Interest – Stigma-Plus claim, and Fair Credit Reporting Act claim.  The Court DENIES the motion as to Plaintiff's First Amendment Retaliation, *Monell*, and state law claims.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 26) - 1

**I       BACKGROUND**

The Second Amended Complaint ("SAC") is not a model of clarity as it contains several vague allegations and conclusory statements.  Notwithstanding, the following is what the Court understands as the germane facts from the SAC:

Defendant City of Battle Ground (the "City") hired Plaintiff in May 2024 as a Customer Service Representative for its Parks and Recreation Department.  (Dkt. No. 15 at 7.)  Plaintiff's position was a "temporary" and "at-will" position.  (*Id*. at 7, 24.)  At the time of hiring, Plaintiff was provided an Employee Handbook.  (*Id*. at 7.)  He asserts, without identifying how, that his temporary position did not meet the definition of "temporary employment" as used in the Employee Handbook.  (*Id*. at 7–8.)  Plaintiff asserts that at the time of his suspension from work, "[n]o written notice, copy of complaint, disclosure of allegations, or other mention of any of Plaintiff's rights under HR Policy 22 was provided."  (*Id*. at 8.)

Plaintiff asserts he and a female co-worker, Employee A, had a "close, mutual, personal relationship" beginning at an unknown date and continuing through December 2024.  (*Id*. at 2.)  In late 2024 and early 2025, the City Manager, Kristina Swanson, and the Deputy City Manager, Robert Ferrier, "identified" Employee A as the City's "unicorn" and stated that they had "plans" for her.  (*Id*. at 1–2.)  After Swanson and Ferrier began telling Employee A that she was the City's "unicorn" and that they had "plans"[1] for her, Employee A began distancing herself from Plaintiff.  (*Id*. at 2.)

At the same time as Swanson and Ferrier expressed their interest in Employee A, Plaintiff asserts Swanson also had a desire to bring to the City an employee from the City of Longview's Parks and Recreation Department.  (*Id*. at 2.)  Plaintiff alleges he "stood in the way of these

---

[1] The SAC does not appear to identify what the "plans" were or how they impacted Plaintiff.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 26) - 2

plans," though he does not explain why or how he draws this conclusion. (*Id*. at 12.) Plaintiff vaguely alleges that the reason he was terminated was to "advance executives' favoritism and cronyism scheme." (*Id*. at 14.)

In March 2025, Employee A met with Kim Cederholm, the City's Park and Recreation Manager and both Plaintiff and Employee A's direct supervisor. (*Id*. at 2. 14) Plaintiff asserts Employee A requested "a scheduling accommodation to avoid overlapping shifts with Plaintiff." (*Id*. at 2.) Cederholm communicated this request to Tamara Gunter, the City Human Resources Manager. (*Id*.) Gunter in turn informed Swanson and Ferrier about Employee A's request. (*Id*.) Plaintiff again vaguely asserts Swanson and Ferrier took this as "an opportunity to remove what they viewed as an obstacle to their plans." (*Id*.) The "executives [then] manufactured a false 'harassment' narrative." (*Id*.)

On March 14, 2025, Cederholm suspended Plaintiff pending an investigation after informing Plaintiff that Employee A had made "allegations" against him. (*Id*. at 8.) Plaintiff asserts Cederholm did not follow any steps contained in the Employee Handbook HR Policy 22 for placing Plaintiff on suspension. (*Id*. at 8–9.)

On March 15, 2025, Swanson and Ferrier directed law enforcement officers, Chief Dennis Flynn, Lieutenant Jason Perdue, and Sergeant Aaron Kanooth, to conduct background checks on Plaintiff, including "NCIC III, TLOxp Advanced and weapons database checks." (*Id*. at 9.) These searches were conducted without Plaintiff's authorization "and without an active criminal case." (*Id*.) The results of these background searches were shared with Swanson, Ferrier, and Cederholm, with Swanson and Ferrier sharing such results with others. (*Id*.) The

City's police department then "stake[d] out[2] Plaintiff's workplace" at Swanson and Ferrier's direction.  (*Id*.)

On March 24, 2025, Gunter and Ferrier interviewed Plaintiff.  (*Id*. at 10.)  Plaintiff asserts he was not informed of the allegations made against him.  (*Id*.)  Plaintiff does not identify what was discussed during this interview other than that he twice stated, "that he did not know the allegations made against him."[3]  After the interview, Plaintiff provided additional information by email and offered further cooperation.  (*Id*.)

On March 28, 2025, Gunter informed Plaintiff he was terminated by telephone call.  (*Id*.)  Gunter "cited violations of the City's Policy Against Unlawful Harassment and Workplace Standards as the reason for termination."  (*Id*.)  Plaintiff alleges Employee A never claimed "she felt harassed, unsafe, or threatened[,]" and only the City ever used the term "harassment."  (*Id*.)  Swanson then sent Plaintiff via email a termination notice.  (*Id*.)  Thereafter, Plaintiff sent Gunter and Swanson an email disagreeing with the City's conclusion that he violated any policy.  (*Id*.)  Plaintiff sent an additional email on March 29, 2025 with what he asserts was "exculpatory photo evidence."  (*Id*.)  Gunter acknowledged receiving Plaintiff's emails at the time, but reaffirmed Plaintiff's termination by telephone on April 1, 2025 and April 9, 2025.  (*Id*.)  Plaintiff began contacting the Mayor and City Council with his "concerns about City leadership" by email on April 10, 2025.  (*Id*. at 11.)

On April 11, 2025, one day after Plaintiff first complained via email to the City Council and the Mayor, Swanson instructed the City Council and the Mayor not to respond to Plaintiff

---

[2] It is unclear what Plaintiff means by "stake-out."

[3] Dkt. No. 3-3 at 4–5 appears to contain some of the typed notes from this interview.  Omitted from the notes provided are answers to several questions, including a question asking whether an individual ever, "indicate[d] to you at any time that any of these actions were unwelcome or unwanted?"  (*Id*. at 4.)

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 26) - 4

and to direct Plaintiff's communications back to her.  (*Id.* at 11.)  Plaintiff, who did not know about Swanson's internal communications, sent additional follow-ups to the Mayor and City Council.  (*Id.*)  One Councilmember, Tricia Davis, blocked Plaintiff from sending emails to her as confirmed by the bounce-back emails Plaintiff received on May 21, May 29, and May 30. (*Id.*)

In May 2025, Cederholm resigned from the City.  (*Id.*)  Plaintiff alleges Cederholm's resignation letter indicates the resignation was due to "ongoing management misconduct and lack of institutional integrity[.]"  (*Id.*)  He further alleges the resignation letter "cited the City's mishandling of Plaintiff's case and other leadership shortcomings."  (*Id.* at 14.)  It is unclear what specific mishandlings or other shortcomings Plaintiff alleges the resignation letter referred to.

Sometime in the first half of March 2025, Ferrier informed the Washington Cities Insurance Authority ("WCIA") that the City had received complaints from multiple female employees that "Plaintiff had 'sexually harassed' them and that it had been 'substantiated.'"  (*Id.* at 14).  Plaintiff states these statements were false because, in part,"[t]here was one female employee involve[d], not 'multiple'" and the employee had "made a scheduling request, not a harassment complaint."  (*Id.*)  Plaintiff asserts Ferrier intentionally made false statements to WCIA to obtain approval from the City's risk manager to terminate Plaintiff and to conceal the true plan of advancing "favoritism and cronyism"—though it is unclear why the City required approval from WCIA prior to terminating an employee.  (*Id.*)[4]

---

[4] Plaintiff also asserts that despite the City's contract with the WCIA requiring the City "promptly report[] all incidents, occurrences, claims and lawsuits which may result in potential liability," the City did not report that they had made the choice to terminate Plaintiff until May 16.  (*Id.* at 11.)  Again, however, it is unclear why this is relevant.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 26) - 5

Plaintiff previously filed two other complaints that were dismissed by the Court pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  (*See* Dkt. Nos. 10, 14.)  Plaintiff filed the SAC on November 10, 2025.  (Dkt. No. 15.)  The Court directed service on November 21, 2025.  (Dkt. No. 16.)  Defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (Dkt. No. 26.)  Plaintiff opposes this motion.  (Dkt. No. 27.)  The matter is fully briefed.  (*See* Dkt. Nos. 27, 28.)

## II    LEGAL STANDARD

After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  Analysis under Federal Rule of Civil Procedure 12(c), like analysis under Federal Rule of Civil Procedure 12(b), requires "a court [to] determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Brooks v. Dunlop Mfg. Inc.*, No. C 10-04341 CRB, 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9, 2011)) (internal quotation marks omitted).

## III    ANALYSIS

### A.  Fourth Amendment

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 26) - 6

Plaintiff's Fourth Amendment claim is based on Defendants conducting background searches using "NCIC III," "TLOxp Advanced," and "weapons database" checks.[5] [6] (Dkt. No. 15 at 15–19.)  Defendants argue this claim should be dismissed because Plaintiff does not have a reasonable expectation of privacy in any of these databases.  (Dkt. No. 26 at 5.)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. CONST., AMEND. IV.  It "protects people, not places."  *Carpenter v. United States*, 585 U.S. 296, 304 (2018) (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)).  It also protects "certain expectations of privacy as well."  *Id*.  "When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause."  *Id*. (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

At issue in *Carpenter* was "whether the Government conducts a search under the Fourth Amendment when it accesses historical cell phone records that provide a comprehensive chronicle of the user's past movements."  585 U.S. at 300.  The Court held that an "individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through" cell-site location information.  *Id*. at 310.  This is because cell phone location

---

[5] The Court presumes the NCIC to be the FBI's National Crime Information Center database, while the TLOxp Advanced appears to be an information service offered by TransUnion to law enforcement and other legal professionals.  *See* U.S. Dep't of Justice, https://www.justice.gov/tribal/national-crime-information-systems (last visited July 1, 2026); TransUnion, https://www.transunion.com/business-needs/investigations-tloxp?atvy=%7B%22320109%22%3A%22Experience+A%22%7D (last visited July 1, 2026).

[6] Plaintiff also makes vague assertions to searches of "WASIS[] and other private and public databases" but does not identify what databases these are or how he asserts these searches violated his Fourth Amendment rights.  (Dkt. No. 15 at 15.)

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 26) - 7

"tracks nearly exactly the movement of its owner. . . . A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." *Id*. at 311.  "[W]hen the Government tracks the location of a cell phone it achieves near perfect surveillance, as if it had attached an ankle monitor to the phone's user." *Id*. at 311–312.

Plaintiff argues "NCIC and TLOxp compile criminal history, addresses, family members, financial data, and personal identifiers – precisely the kind of comprehensive digital dossier *Carpenter* addressed." (Dkt. No. 27 at 26.)  According to Plaintiff, he maintains a privacy interest in these "digital records." (*Id*.)[7]

The Court declines to extend *Carpenter*'s holding to the facts Plaintiff alleges.  *Carpenter* focused solely on an individual's cell-site location information, which has the ability to achieve near perfect surveillance of an individual.  585 U.S. at 312.  In comparison, the Court is unaware of any decision holding that an individual has a privacy expectation, for purposes of the Fourth Amendment, in information compiled in the NCIC, TLOxp Advanced or "weapons" databases.  To the contrary, information contained in the NCIC "is not the sort of data over which an individual can successfully assert a right to privacy." *Eagle v. Morgan*, 88 F.3d 620, 628 (9th Cir. 1996) (rejecting claim that law enforcement violated constitutional right to privacy by retrieving a person's criminal record from the NCIC).

As for the TLOxp Advanced database, Plaintiff describes its use as being subject to a "TLOxp Subscriber Agreement" between the City and TransUnion.  (Dkt. No. 15 at 18.)  The

---

[7] Plaintiff also appears to raise a new claim in his response that the public stake-out of his workplace violated his Fourth Amendment rights.  (Dkt. No. 27 at 23.)  Plaintiff does not assert this claim in his complaint.  Moreover, he also lacks a reasonable expectation to privacy in his workplace.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 26) - 8

Court is unaware of any constitutional privacy interest prohibiting a municipality from paying to access a private entity's compilation of public information about an employee.[8]

Accordingly, the Court GRANTS Defendants' motion for judgment on the pleadings on Plaintiff's Fourth Amendment claim.

**B. First Amendment (Retaliation)**

Plaintiff asserts a First Amendment retaliation claim based on (1) Swanson instructing City councilmembers and the Mayor not to respond to Plaintiff's emails and (2) Davis's affirmative actions in rejecting emails Plaintiff sent to Davis.  (Dkt. No. 15 at 21.)

To prevail on a First Amendment retaliation claim, a plaintiff must prove "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action."  *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).  "Once a plaintiff has made such a showing, the burden shifts to the government to show that it 'would have taken the same action even in the absence of the protected conduct.'"  *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)).

Defendants argue only that Plaintiff did not engage in constitutionally protected activity because the "First Amendment does not protect the airing of 'private grievances,' only matters of public concern."  (Dkt. No. 26 at 6) (citing *Biggs v. City of St. Paul*, No. 6:18-cv-506-MK, 2019

---

[8] Plaintiff argues the Subscriber Agreement prohibited Defendants from obtaining a TLOxp report under the circumstances (Dkt. No. 15 at 18), but whether or not that is true is an issue separate and apart from whether Defendants violated a constitutional privacy interest in obtaining the report from TransUnion.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 26) - 9

WL 4575839, at *7 (D. Or. Mar. 7, 2019) and *Brownfield v. City of Yakima*, 612 F.3d 1140, 1147 (9th Cir. 2010)). But the decisions Defendants rely on involve employee speech while employed and not speech by a former employee after their termination. *See Biggs*, 2019 WL 4575839, at 6 (discussing distinction between an employee speaking as a private citizen versus as part of a public employee's employment duties for purposes of First Amendment analysis); *Brownfield*, 612 F.3d at 1147 (same); *Desrochers v. City of San Bernadino*, 572 F.3d 703, 708–709 (9th Cir. 703) (same). Therefore, the decisions Defendants rely on appear to be inapposite.

The SAC identifies Plaintiff engaged in speech *after* his termination[9] when he sought to communicate with City councilmembers and the Mayor regarding his termination and whether various City officials understood and appropriately applied City policies. (Dkt. No. 15 at 19–20.) Based on the limited facts presented, the Court finds at this stage that Plaintiff, as a private citizen after his termination, engaged in protected speech when he sought to communicate with councilmembers and the Mayor.

Defendants do not argue the other two elements of a First Amendment retaliation claim. For now, the Court will find that it remains a question of fact whether Davis's decision to block Plaintiff's email or Swanson's instructions to disregard his emails amount to an adverse action that would chill an ordinary person from engaging in protected activity. The Court will also find it is a question of fact for now whether there was a substantial causal relationship between the constitutionally protected activity and such alleged adverse action. It may be, however, that the Court reaches a different conclusion once presented with a full factual record and legal briefing on these issues.

---

[9] The Court's prior orders dismissing Plaintiff's original and first amended complaint did not recognize Plaintiff alleged he engaged in speech after his employment had ended, leading to the Court's incorrect application of *Biggs* to Plaintiff's claim.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 26) - 10

Accordingly, the Court DENIES Defendants' motion for judgment on the pleadings on Plaintiff's First Amendment retaliation claim.

## C. First Amendment (Interference with Right to Petition)

Similar to his First Amendment retaliation claim, Plaintiff asserts Defendants interfered with his right to petition the City for redress of grievances by (1) Swanson instructing City councilmembers and the Mayor not to respond to Plaintiff's emails and (2) Davis's affirmative actions in rejecting emails Plaintiff sent to Davis. (Dkt. No. 15 at 19, 23) (asserting these actions "interfered with Plaintiff's fundamental right to petition").

Defendants argue neither Swanson's instructions to City council members nor Davis's decision to block Plaintiff's emails restricted Plaintiff's right to petition the City for grievances. (Dkt. Nos. 26 at 7–8; 28 at 3–4.) "Nothing in the First Amendment, or in case law interpreting it," Defendants argue, "suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications in public issues." (Dkt. No. 27 at 7.) Defendants point out that Plaintiff demonstrated he was aware of his ability to petition the City, including by attending City Council meetings, by pursuing media involvement, or by pursuing legal recourse. (*Id*. at 7–8.)

Here, the Court finds that other than offering conclusory statements that Defendants interfered with his right to petition the City for grievances, the SAC offers no facts supporting the claims that Plaintiff's right to petition the City was restricted. The SAC fails to identify how Davis's decision to block Plaintiff's email or how Swanson's instructions to not respond to Plaintiff's emails barred Plaintiff from petitioning the City for grievances. *See Bridgeport Way Community Ass'n v. City of Lakewood*, 203 Fed. Appx. 64, 68 (9th Cir. 2006) ("Although City Council members may have refused to listen to [the plaintiff] because of the City Attorney's

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 26) - 11

directive [not to meet informally with individuals], there is no evidence that [plaintiff was] cowed into remaining silent and not making their views known.  [Plaintiff] could have persisted in lobbying the City Council, perhaps by using alternative means of communication, such as organizing a protest or petition drive, sending letters, or telephoning the offices of City Council members."); *see also Collins v. West*, No. 3:20-cv-6082-DWC, 2021 WL 4241317, *5 (W.D. Wash. Aug. 24, 2021) ("This Court concurs with Defendants that requiring Petitioner to use a designated email address when contacting the City and filtering incoming email to that address in no way implicates his right to petition the government for redress.").

Accordingly, Defendants' motion for judgment on the pleadings on claim for violation of Plaintiff's First Amendment Right to Petition is GRANTED.

**D.  Fourteenth Amendment (Procedural Due Process)**

Plaintiff brings a procedural due process claim based on what he asserts was insufficient procedure prior to his termination.  (Dkt. No. 15 at 24–27.)  Defendants respond Plaintiff was an at-will employee not entitled to procedural due protection rights.  (Dkt. No. 26 at 8–9.)

"A procedural due process claim has two discrete elements." *Busey v. Richland Sch. Dist.*, 172 F. Supp. 3d 1167, 1175 (E.D. Wash. 2016).  The first "'asks whether there exists a liberty or property interest which has been interfered with by the State.'"  *Id*. (quoting *Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013)).  The second "'examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Id*. (quoting *Vasquez*, 734 F.3d at 1042).

"Absent a contract to the contrary, Washington employees are generally terminable 'at will.'"  *Danny v. LaidlawTransit Servs. Inc.*, 193 P.3d 128, 131 (2001) (Wash. 2008) (en banc) (citing *Gardner v. Loomis Armored, Inc.*, 913 P.2d 377, 379 (Wash. 1996) (en banc)).  And "[i]f

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 26) - 12

under state law, employment is at-will, then the claimant has no property interest in the job." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Thus, an "at will" employee lacks the property interest in their job to bring a Fourteenth Amendment due process claim based on their termination. *See Ingraham v. Wright*, 420 U.S. 651, 672 (1977) ("Due process is only required when a decision of the state implicates an interest within the protection of the Fourteenth Amendment.").

Here, Plaintiff bases his Fourteenth Amendment procedural due process claim on the City's alleged failure to comply with the employee termination policies contained in the Employee Handbook he received; specifically, HR Policy 22. (Dkt. No. 15 at 24–27.) HR Policy 22 contains a series of procedural steps for terminating an employee. (*See id*. at 8–9.)

The SAC acknowledges Defendants classified Plaintiff as an at-will employee. (*Id*. at 24.) Despite this, Plaintiff asserts a property interest in his employment was created when Defendants chose to "initiate disciplinary proceedings under HR Policy 22" because by "invoking that policy, Defendants triggered a cause-based process" for terminating Plaintiff. (*Id*.) This position, however, is contradicted by Plaintiff's admission that [n]one of the . . . procedures from Policy 22 were followed for Plaintiff's suspension." (*Id*. at 9.) Moreover, the earliest time Plaintiff identifies HR Policy 22 being invoked was on April 7— *after* his termination—when Gunter told Plaintiff via email that the City would give him an opportunity under HR Policy 22 "to meet and discuss the termination of [his] employment." (Dkt. Nos. 15 at 26; 27 at 17.)

The SAC offers no basis to plausibly conclude Plaintiff's employment status was anything other than at-will. Plaintiff fails to assert facts plausibly establishing that HR Policy 22 was invoked prior to his termination such that his at-will employment was transformed into

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 26) - 13

protected employment or that any post-termination invocation of HR Policy 22 was retroactive. As such, he cannot establish a property interest in his employment. Accordingly, the Court GRANTS Defendants' motion for judgment on the pleadings on Plaintiff's Fourteenth Amendment procedural due process claim.

### E. Fourteenth Amendment (Liberty Interest – Stigma-Plus)

Plaintiff asserts the Fourteenth Amendment "protects liberty interests in reputation." (Dkt. No. 15 at 28.) Plaintiff asserts Defendants risked his reputation without due process by communicating false information to WCIA that multiple employees had filed sexual harassment claims against Plaintiff and those claims were substantiated. (*Id*.) Plaintiff also asserts the name-clearing hearing came too late and was illusory. (Dkt. No. 27 at 7–8.) Defendant responds Plaintiff was provided an adequate hearing. (Dkt. No. 26 at 9–10.)[10]

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). To trigger the procedural protections based on these reputational liberty interests, a plaintiff must show "(1) the accuracy of the charge is contested; (2) there is some public disclosure of the charge; and (3) the charge is made in connection with termination of employment." *Matthews v. Harney Cnty., Or., Sch. Dist. No. 4*, 819 F.2d 889, 892 (9th Cir. 1987). If these criteria are met, a plaintiff is entitled to a name-clearing hearing. *Brady v. Gebbie*, 859 F.2d 1543, 1553 (9th Cir. 1988).

---

[10] It appears Plaintiff chose not to take advantage of this hearing. (*See* Dkt. No. 27 at 8) ("nothing suggests the hearing *would* retract the stigmatizing statements already in WCIA's system or cause Defendants to refrain from making further false statements") (emphasis added) (*see also* Dkt. No. 28 at 1–2).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 26) - 14

Here, even assuming Plaintiff has a liberty interest entitling him to a name-clearing hearing, on April 9, 2025, Defendant offered Plaintiff an opportunity to schedule and participate in a name clearing hearing.  (Dkt. Nos. 27 at 7; 3-4 at 7.)  Contrary to Plaintiff's assertion that the offer to conduct a hearing came too late because it came after his termination (Dkt. No. 27 at 7), "due process does not require that his name-clearing hearing take place prior to his termination unless there are exigent circumstances." *Barton v. City of Portland*, 242 F. Supp. 2d 893, 901 (D. Or. 2002).  Plaintiff identifies no exigent circumstances that required he be given a pre-termination name clearing hearing.

Notwithstanding, Plaintiff argues the hearing was illusory because Defendants' "offer to preserve information 'as part of employment record' for a terminated employee is meaningless" and "nothing suggests the hearing would retract the stigmatizing statements already in WCIA's system or cause Defendants to refrain from making further false statements."  (Dkt. No. 27 at 7–8.)  But these arguments amount to speculation as Plaintiff chose not to participate and "now should not be allowed to question the adequacy of the offered hearing to which he did not avail himself." *Straub v. Spokane*, Case No. 2:16-CV-0029-TOR, 2016 WL 3546343, at *8 (E.D Wash Jun. 23, 2016), *aff'd sub nom. Straub v. City of Spokane*, 738 Fed. App'x 392 (9th Cir. 2018).

Accordingly, the Court GRANTS Defendants' motion for judgment on the pleadings on Plaintiff's Fourteenth Amendment Liberty Interest Stigma-Plus theory.

## F.  Municipal Liability (*Monell*)

Plaintiff brings a *Monell* claim asserting the "policies, customs, or deliberate indifference" of the City caused the violations of his First, Fourth, and Fourteenth Amendment rights.  (Dkt. No. 15 at 31.)  As part of his *Monell* claim, Plaintiff asserts "Swanson issued a

directive [the day after Plaintiff first emailed City Council] ordering [the City] Council not to communicate with Plaintiff" and "[t]his directive—issued by the City's top policymaker—ratified and institutionalized the retaliatory conduct as official City practice." (*Id*. at 33.) "[A] municipality can be liable for an isolated constitutional violation when the person causing the violation has final policymaking authority." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citation omitted).

Because the Court has permitted Plaintiff to proceed with his claim for First Amendment retaliation and because Plaintiff alleges Swanson is a final policymaker who led to the actions underlying Plaintiff's First Amendment Retaliation claim, the Court also DENIES Defendants' motion for judgment on the pleadings on Plaintiff's *Monell* claim. As with the underlying First Amendment retaliation claim, the Court may reach a different conclusion once presented with a full factual record and legal briefing.

**G. Fair Credit Reporting Act (15 U.S.C. § 1681)**

The SAC asserts Defendants violated the Fair Credit Reporting Act ("FCRA") by obtaining a TransUnion TLOxp report without following the requirements of the FRCA. (Dkt. No. 15 at 35–37.) Relying on hallucinated court decisions,[11] the SAC argues a TLOxp report is a "consumer report" for purposes of the FCRA. (*Id*. at 35.) In response, Defendants argue the TLOxp report is not a consumer report for purposes of the FCRA. (Dkt. No. 26 at 13.)

The FCRA defines a "consumer report," identifying the specific information that makes a report a consumer report. *See* 15 U.S.C. § 1681a(d). However, the SAC does not identify what

---

[11] Plaintiff provides citations to decisions identified as *Rodriguez v. Equifax Info. Servs.* and *Henderson v. CoreLogic Nat'l Background Data*. These citations do not exist. Plaintiff is hereby warned that providing the Court with hallucinated cases may be considered an attempt to mislead the Court, which could lead to sanctions including potential dismissal of all claims.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 26) - 16

information is contained in a TLOxp report such that the Court is able to conclude whether it is plausible that the TLOxp report is a consumer report for purposes of the FCRA. Similarly, without knowing exactly what information a TLOxp report is alleged to contain, the Court is unaware of any decision finding that a TLOxp report (or something similar) is a consumer report for purposes of the FCRA. Accordingly, as pled, the information in the SAC is insufficient to support an alleged FCRA violation because the Court cannot find that a TLOxp report is a consumer report under the FCRA.

The Court GRANTS Defendants' motion for judgment on the pleadings on Plaintiff's FCRA claim.

**H. State Law Torts**

Plaintiff also asserts claims for intentional infliction of emotional distress (Dkt. No. 15 at 37), negligent supervision and retention (*id*. at 38), defamation per se (*id*.), fraud/misrepresentation (*id*. at 39), and wrongful termination in violation of public policy (*id*.). Defendants do not challenge these causes of action on their merits but instead argue only that the Court should decline to exercise supplemental jurisdiction over these claims. (Dkt. No. 26 at 14.) Because the Court denies Defendants' motion for judgment on the pleadings on Plaintiff's First Amendment retaliation claim and the related *Monell* claim, the Court finds it is proper at this time to exercise supplemental jurisdiction over these claims.

Accordingly, the Court DENIES Defendants' motion for judgment on the pleadings on Plaintiff's state law claims.

## IV    ORDER

Having considered Defendants' motion for judgment on the pleadings and the remainder of the record, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 26) - 17

judgment on the pleadings (Dkt. No. 26).  The Court DISMISSES Plaintiff's Fourth Amendment, First Amendment (Right to Petition), Fourteenth Amendment (Procedural Due Process), Fourteenth Amendment (Stigma-Plus), and Fair Credit Reporting Act claims.  The Court DENIES Defendants' motion as to Plaintiff's First Amendment (Retaliation), *Monell*, and state law claims.

Dated this 2nd day of July, 2026.

David G. Estudillo
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 26) - 18